United States District Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-14-97 |
| v. | § | |
| | § | CIVIL ACTION NO. H-18-0029 |
| EMANUEL DANDRE WADE. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket Entry No. 219). The Government filed a response (Docket Entry No. 250), to which defendant filed a reply (Docket Entry No. 256). Defendant also filed two motions labeled as motions to amend (Docket Entries No. 258, 259); however, the motions seek to add additional support for the existing claims, not add new claims. Accordingly, the Court has construed the motions as supplemental memoranda of law in support of the section 2255 motion.

Having reviewed the section 2255 motion and memoranda of law, the response and reply, the record, and the applicable law, the Court DENIES the section 2255 motion and DISMISSES this lawsuit for the reasons that follow.

### *Background and Claims*

On March 23, 2015, defendant pleaded guilty pursuant to a written plea agreement to two counts of sex trafficking of minors. On December 4, 2015, the Court sentenced him to 360 months' imprisonment and a ten-year term of supervised release. The Fifth Circuit Court

of Appeals dismissed defendant's ensuing appeal as frivolous pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *United States v. Flores*, 632 F.3d 229 (5th Cir. 2011).

Defendant raises the following claims for habeas relief in this timely proceeding:

1.  His guilty plea was involuntary because trial counsel failed to

    a.  advise him he could receive a sentence between 360 months and life incarceration;

    b.  advise him he could receive an enhanced sentence due to relevant conduct;

    c.  hold the Government to the terms of the plea agreement;

    d.  file a motion to withdraw his guilty plea;

    e.  object to the use of relevant conduct for sentencing;

    f.  hold the Government to its obligation to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1.

2.  Trial counsel was ineffective at sentencing in failing to object to

    a.  the erroneous calculation of his criminal history score;

    b.  two criminal history points imposed under U.S.S.G. § 4A1.1(d);

    c.  a four-level enhancement imposed under U.S.S.G. § 3D1.4; and

    d.  the erroneous calculation of his total offense level.

The Government argues that these claims are refuted by the record or otherwise without merit, and that the section 2255 motion should be denied.

2

***Legal Standards***

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255:  (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal.  *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990).  If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction.  *Haines v. Kerner*, 404 U.S. 519 (1972).  Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas

petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### *Factual Basis and Guilty Plea*

The Government presented the following factual basis at the  plea hearing:

If this case were to proceed to trial on these two counts, the United States would be prepared to prove that Emanuel Dandre Wade, with a date of birth from the year 1989, with a particular home address and driver's license number, is known as both Marcus and Emanuel, and that those names are going to be used interchangeably to refer to Mr. Wade.  In these particular type cases and this lifestyle, it's not uncommon for individuals involved with domestic minor sex trafficking and commercial sexual enterprises to have street names or alternative identities. A February 11th of 2014 query of the Texas Work Force database showed that the defendant had absolutely no employment history.

In late May or early June of 2013, Marcus sent 15-year-old H.G., who was born in 1997, a message on social media, using a Web site called Urban Chat. Marcus asked H.G. to contact him if she was interested in being a model. He told H.G. he would provide transportation. Marcus and Williams transported H.G. to the Sun Suites Hotel near I-45 and Rankin Road, but stopped at a Walmart beforehand to purchase panties for H.G.

Marcus photographed H.G. in the panties using his cellular phone. He then posted her photographs on Backpage.com. Backpage.com is a Web site used to advertise sexual services. Marcus purchased – among other things [*sic*]. Marcus purchased condoms from Walmart and Exxon, but H.G. was not required to wear [*sic*] them.

Marcus promised H.G. half of the money she earned from prostituting. H.G. indicates that she earned approximately $8,000 while working for Marcus, and that he kept all of her money.

According to 14-year-old S.G., who was born in 1998, in late May to early June of 2013, Perry transported H.G. and S.G. to pick up Marcus at his residence located at the address on his driver's license. Once inside the

vehicle, Marcus told H.G., S.G., and Perry to go to a hotel on the North Freeway in Houston. S.G. could not recall the name of the hotel.

When they arrived at the hotel, Perry rented a room because Marcus did not have the necessary identification with him. S.G. witnessed Marcus photograph H.G. and Perry with H.G.'s cellular phone and post their photos to an unknown Web site. The telephone number displayed on the advertisement was described by S.G. as the trick phone number. According to S.G., the trick phone is what Marcus used to arrange prostitution dates.

Marcus taught S.G. how to screen telephone calls for law enforcement and how much to charge. While at the hotel, Marcus told S.G., H.G., and Perry, that he would protect them.

On February 27th of 2014, A.A., who was born in 1996, was discovered at the Baymont Inn on Northwest Freeway in Houston, in Room 250. She was in the company of Charmaine Henderson. A.A. stated that she had been prostituting for Marcus with Henderson for several months. At the time of that vice arrest, A.A. was a student and the officers found her doing her homework. A.A. identified both Marcus and Henderson in photo line-ups.

A.A. indicated that she gives her earnings to Henderson now that Marcus is in jail and that she and Shortie sleep in the same bed. Henderson, who goes by the street name Shortie, is listed as the co-owner of Elite Models. This is the business Marcus claims to own and run. Henderson's phone number is that – and that on the business card for the modeling agency, appears in ads for prostitution regularly.

Based on jail calls that have been recorded since the arrest of Marcus, Henderson is picking up the slack and running the business with another man. During the time periods listed above and specified in the indictment, Wade, also known as Marcus, in and affecting interstate commerce by use of hotels, cell phones, and Internet services, among other things, maintained minor females knowing or in reckless disregard of the fact that A.A. and H.G. had not attained the age of 18 years and were caused to engage in commercial sex from which Wade benefited financially.

Wade knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained these minors during the time periods listed in the indictment.

(Docket Entry No. 197, pp. 26–30.)  Defendant admitted and agreed on the record in open court that the Government's summary of the facts was true.  *Id.*, p. 30.

Defendant and the Court had the following relevant exchange during defendant's plea hearing:

> THE COURT:        Have you had enough time to talk to your attorney in this case?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        And are you satisfied with Ms. Cornelio, as your attorney?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        Do you need to ask her any questions or get any advice from her before we go on?
>
> THE DEFENDANT:        No, sir.

(Docket Entry No. 197, pp. 6.)

> THE COURT:        And are you making this plea of guilty to Counts 2 and 5 freely and voluntarily?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        Has anyone forced you, threatened you, coerced you, or done any violence to you or any other person to get you to plead guilty in this case?
>
> THE DEFENDANT:        No, sir.
>
> THE COURT:        Are you pleading guilty because of any promise that's been made to you, other than what is contained in your written plea agreement?
>
> THE DEFENDANT:        No, sir.

6

THE COURT:        Are you pleading guilty to protect someone else?

THE DEFENDANT:        No, sir.

THE COURT:        Are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT:        Yes, sir.

THE COURT:        Have you read and do you understand the plea agreement in this case?

THE DEFENDANT:        Yes, sir.

THE COURT:        And are you prepared to sign it under oath at this time?

THE DEFENDANT:        Yes, sir.

*Id*., pp. 26–31.  The Court made findings on the record in open court:

These are the Court's findings: I find the defendant is clearly mentally competent and capable of entering an informed plea. I find the plea is supported by independent facts establishing all of the elements of the offense and that the defendant intended to do the acts he committed. I find the defendant's plea of guilty is voluntarily, freely, and knowingly made, and that the defendant understands the nature of these proceedings and the consequences of his plea of guilty and that this is an informed plea.

Therefore, Mr. Wade, I accept your plea of guilty and I find you guilty as charged in Count 2 and Count 5 of the indictment.

*Id*., p. 34.

### *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts*

7

*v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id*. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Id*. at 695–96.

### *Guilty Plea Errors*

To demonstrate prejudice in context of a guilty plea, a defendant must show "that there is a reasonable probability that but for counsel's errors, the defendant would not have plead guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). The court must "focus on the defendant's decision making." *Lee v. United States*,

8

___U.S. ____, 137 S. Ct. 1958, 1961, (2017).  Factors relevant to determining whether a defendant would have gone to trial can also include "the risks [he] would have faced at trial," his "representations about his desire to retract his plea," and "the district court's admonishments." *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (quoting *United States v. Batamula*, 823 F.3d 237, 240 n.4 (5th Cir. 2016)).

This Court begins by noting that defendant has not asserted that he would have proceeded to trial but for counsel's alleged deficient performance.  This deficiency, standing alone, preclude habeas relief on defendant's claim  *See United States v. Kayode*, 777 F.3d 719, 726 n.4 (5th Cir. 2014) ("This glaring omission in [defendant]'s affidavit alone would likely justify affirmance" of the district court's decision to deny defendant's section 2255 motion.).

Further, defendant's statements and representations made in the plea agreement and under oath during the guilty plea hearing refute the claims of ineffective assistance he now raises.  His solemn declarations made in open court are entitled to a presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Regardless, defendant's claims lack merit, as shown below.

*Potential Sentence*

Defendant claims that counsel advised him prior to his guilty plea that he would receive a sentence between 168 and 210 months.  Trial counsel submitted a court-ordered affidavit responding to defendant's claims, in which she testified in relevant part as follows:

19. According to Mr. Wade, counsel never mentioned "that the government would impose a sentence within the guidelines range of 360–Life, and instead erroneously advised him he would receive a sentencing guidelines range of 168–210 months pursuant to the plea agreement." Accordingly, Mr. Wade states that he was not properly informed of the consequences of entering his plea.

*Response*: Undersigned counsel respectfully disagrees with Mr. Wade. First, undersigned counsel does not believe that she ever advised Mr. Wade that his sentencing range would be 168–210 months, has no recollection of ever suggesting such a range, has no notes that indicate that she advised regarding such a range, and cannot surmise any basis that would cause her to advise regarding such a range. Instead, undersigned counsel advocated for a range of 168–210 months at sentencing, but advised Mr. Wade that it was a range that was significantly lower than the range provided by the PSR and lower than the likely range that would be applied by the Court. However, as stated earlier, undersigned counsel advised Mr. Wade in a manner consistent with her regular practices, including advising that any Guideline estimate was only an estimate, and that the PSR – which would not be disclosed until after sentencing [*sic*] – might provide a different sentencing range than she and Mr. Wade wanted or expected. The Court also advised Mr. Wade of this at his rearraignment, and he stated that he understood. Undersigned counsel further remembers having an explicit conversation with Mr. Wade explaining that the Guidelines under the plea agreement and as a result of a plea would be lower than without the plea agreement. Undersigned counsel also explicitly remembers having a conversation with Mr. Wade that she would advocate for a downward variance based on his plea to only two, rather than six counts, and would argue that the evidence did not support the inclusion of dismissed counts as relevant conduct. Counsel advised that the Court would decide on the appropriate sentencing range and sentence.

Moreover, upon receipt of the PSR, counsel reviewed the PSR with Mr. Wade. During that conversation, undersigned counsel remembers that Mr. Wade was extremely upset, and remembers them discussing whether he should have pleaded. Undersigned counsel recalls advising Mr. Wade that his Guidelines under the plea agreement and as a result of the plea were be [*sic*] lower than without the plea agreement –

10

namely 360–life, rather than life.  She vividly remembers insisting to Mr. Wade that, although it was certainly a lot of time, they wanted to avoid a Guideline range of life.  Undersigned counsel also explicitly remembers again advising Mr. Wade that she would advocate for a downward variance and ask the Court not to consider the pseudo-counts.

(Docket Entry No. 237, pp. 9–11, record citations omitted.)

Moreover, defendant expressly agreed in the written plea agreement that any estimate from counsel of his potential sentencing range was not binding and that it did not induce his guilty plea:

8.      [D]efendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that [he] may have received from his counsel, the United States or the Probation Office, *is a prediction and not a promise, did not induce his guilty plea*, and is not binding on the United States, the Probation Office or the Court.

and

13.      Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18 United States Code, Section 3553(a). *Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s)* to which [d]efendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.

(Docket Entry No. 70, ¶ ¶ 8, 13.)

The Court reiterated this at defendant's plea hearing:

11

> THE COURT:        All right. Now, I'm sure Ms. Cornelio has talked to you about the Sentencing Guidelines and how they might work in your case; is that right?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        Okay. Well, whatever she has told you about the Sentencing Guidelines and how they may work in your case, *maybe she's even given you some idea of what she thinks your sentence might potentially be at the sentencing hearing, none of that is a promise or guarantee of any kind from Ms. Cornelio about your sentence.* Do you understand that?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        I'm the only one who can make you any kind of promise about your sentence, because I'm the one who determines the sentence. So no one has made you any promise or assurance of any kind about your sentence; is that right?
>
> THE DEFENDANT:        Yes, sir.

(Docket Entry No. 197, pp. 25–26, emphasis added.)

Defendant acknowledged and agreed at the plea hearing that the range for his sentence was between ten years and life incarceration:

> THE COURT:        All right. Now, if you are convicted, the penalty that you face is a term of imprisonment not less than ten years and not more than life. So you understand that there's a minimum of ten years in federal prison, all the way up to a maximum of life in prison? Do you understand that?
>
> THE DEFENDANT:        Yes, sir.

*Id.*, p. 14.  The Court made clear to defendant, and defendant confirmed his understanding, that he would be pleading guilty without knowledge of his future sentence.  The Court further

12

admonished defendant that any dissatisfaction with his subsequent sentence would not be grounds for setting aside the plea:

> THE COURT:        [T]here are certain things that you need to know with respect to your plea agreement. Number one, you're not going to know today what your sentence is going to be. That won't be determined until several months later [at] the sentencing hearing. Today you will decide whether to plead guilty to these charges and sign this written plea agreement.  But you won't know until later on what your sentence is. And *if the sentence at the sentencing hearing later on turns out to be more than you expected it to be, you cannot come back in here and withdraw your guilty plea and start this process over again* just because the sentence is longer than you expected. Do you understand that?
>
> THE DEFENDANT:        Yes, sir.

*Id*., p. 19, emphasis added.

Even assuming trial counsel had expressed her opinion as to a potential sentencing range of 168–210 months' incarceration, defendant acknowledged in writing and in open court that it was not a promise or guarantee, that he was not relying on it in pleading guilty, and that the sentencing range for his offense was between ten years and life incarceration. He further acknowledged his understanding that dissatisfaction with the sentence he later received would not be grounds for withdrawing the guilty plea.  Although counsel advocated at sentencing for a range between 168–210 months, this Court did not agree.  (Docket Entry No. 206, pp. 32, 36–37.)

For the above reasons, defendant establishes neither deficient performance nor prejudice in context of his guilty plea.  Habeas relief is unwarranted.

*Use of Relevant Conduct*

Defendant complains that counsel failed to advise him he could receive an enhanced sentence due to relevant conduct.  In responding to this claim, counsel testified in her affidavit as follows:

> 20.  Wade claims counsel was ineffective for failing to advise him regarding relevant conduct.
>
> *Response*:  Undersigned counsel explicitly recalls advising Mr. Wade that the Court would consider dismissed counts and other relevant conduct in the sentencing calculus if it found by a preponderance of the evidence that Mr. Wade had committed such conduct.  Moreover, both the U.S. Attorney and the Court discussed relevant conduct with Mr. Wade during his rearraignment.

(Docket Entry No. 237, p. 11, record citations omitted.)

The parties discussed on the record at the plea hearing the use of relevant conduct evidence for sentencing purposes:

> MS. ZACK:  Your Honor, before he signs, I just want to go over one more thing just so that everybody is clear and this does not come up at sentencing. That Mr. Wade acknowledges, is that while he is only pleading to Counts 2 and 5, all of the facts and circumstances in this investigation will be provided to probation in the preparing of the PSR and that this Court may become aware of other victims and other individuals and other conduct of Mr. Wade and that Your Honor can take that into account and the guidelines can take that into account, even though he is only admitting to these two counts. And that it is a very different standard that Your Honor uses in determining the appropriate sentence and to what is or is not believable or credible in a guideline – in a pre-sentence report.
>
> THE COURT:        Do you understand that?
>
> (Defendant conferring with counsel.)

14

THE COURT:        Do you understand what Ms. Zack just said?

THE DEFENDANT:        Yes, sir.

THE COURT:        I can take into account other conduct, dismissed counts, other people who have not been – other counts that have not been indicted in this case as what we call relevant conduct, which is conduct in the same course and scheme, and that potentially could make your sentence longer in this case. Do you understand that?

THE DEFENDANT:        May I ask you a question, or do I have to ask–

THE COURT:        You better ask your lawyer.

(Defendant conferring with counsel.)

THE COURT:        Did she answer all of your questions?

THE DEFENDANT:        Yes, sir. Thank you for your patience.

THE COURT:        All right. Are you ready to proceed?

THE DEFENDANT:        Uh-huh.

THE COURT:        Are you ready to sign the plea agreement under oath?

THE DEFENDANT:        Yes, sir.

(Docket Entry No. 197, pp. 31–33.)

Thus, defendant was aware, and expressly verified his understanding, that relevant conduct evidence could be used in setting his sentence.  Counsel strongly advocated at sentencing against the use of relevant conduct evidence, but it was the Court's discretion to use, or not use, such information in fashioning an appropriate sentence.

15

Defendant demonstrates neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is not merited.

*Breach of Plea Agreement*

According to defendant, he and the Government reached "an agreed upon punishment, predetermined in the stipulated plea agreement." (Docket Entry No. 219, p. 17.) He claims that trial counsel was ineffective in not holding the Government to the stipulated punishment.

In responding to defendant's claim, trial counsel testified in her affidavit to the following:

> 21. Wade claims undersigned counsel was ineffective for failing to "hold the Government to it's [*sic*] position toward [Mr. Wade's] sentence" because the plea agreement listed "every enhancement applicable to him and the position the government would take towards each enhancement." Since the plea agreement did not mention relevant conduct, Mr. Wade believes that it was a violation of the plea agreement for relevant conduct to be included as a consideration for sentencing.
>
> *Response*: Undersigned counsel attaches the plea agreement, which makes no agreement with respect to relevant conduct. Undersigned counsel fully and completely reviewed this plea agreement with Mr. Wade prior to his re-arraignment. There is no non-frivolous argument that the government breached the promises it made in the plea agreement.

(Docket Entry No. 237, pp. 11–12, record citations omitted.)

Defendant is factually and legally incorrect in arguing that the Government stipulated to an agreed punishment. The Plea Agreement did not stipulate to an agreed punishment or to exclusion of relevant conduct. To the contrary, the agreement made clear that there was

no agreed punishment and that defendant's sentence would be determined by the Court at

sentencing:

> 8.      [D]efendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that [he] may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.

and

> 13.      Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18 United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which [d]efendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.

(Docket Entry No. 70, ¶¶ 8, 13.)

No breach of the plea agreement is shown.  Deficient performance and actual

prejudice are not established under *Strickland*, and habeas relief is not merited.

*Use of Relevant Conduct/Proffer Statement*

Defendant next contends that counsel failed to object to consideration of relevant

conduct or his proffer statement for sentencing purposes.  In responding to this claim, trial

counsel testified in her affidavit as follows:

17

23. Wade claims that the inclusion of Wade's proffer statement into his PSR violated the spirit of the plea agreement and undersigned counsel was ineffective for not immediately requesting that the statement be removed from the PSR and that the plea be withdrawn.

*Response*: Counsel did, in fact, object to any consideration by the Court of the proffer statement. The Probation Author replied. Additionally, the inclusion of the proffer statement in the PSR did not violate the plea agreement.

(Docket Entry No. 237, pp. 12–13, record citations omitted.)

Defendant's argument that inclusion of the proffer statement violated "the spirit" of the plea agreement does not raise a cognizable claim for habeas relief, as no constitutional issue is involved.   Moreover, defendant presents no relevant authority supporting his argument that relevant conduct could not be considered for sentencing purposes. Regardless, counsel strongly objected to the Court's use of relevant conduct evidence at sentencing, which this Court overruled.  (Docket Entry No. 206, pp. 32–33, 35–37.)

Defendant shows neither deficient performance nor prejudice under *Strickland*, and habeas relief is not warranted.

*Motion for Downward Departure*

Defendant claims that trial counsel failed to hold the Government to its obligation and/or promise to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1.  As shown below, no relief is warranted on this claim, as the Government had no obligation to file such motion.

The plea agreement did not obligate the Government to file a motion for departure under § 5K1.1.  Nor did the Government promise to file such motion.  To the contrary, the parties agreed as follows:

> 5.      The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. *Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas*.  Should [d]efendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," *the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1* of the Sentencing Guidelines.  Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 19 of this agreement.  Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

(Docket Entry No. 70, ¶ 5, emphasis added.)   The plea agreement does not support defendant's allegation that the Government was obligated, or otherwise promised, to file a section 5K1.1 motion.

Defendant acknowledged on the record in open court at the plea hearing that there was a *possibility* of a section 5K1.1, and that no agreements existed outside the terms of the written plea agreement:

> MS. CORNELIO:    Your Honor, we would just add that the plea agreement does also conceive of the possibility that the government would make a motion for substantial assistance based on the terms of the plea agreement.
>
> THE COURT:       So there's a possibility of a 5K?
>
> MS. ZACK:  There is a possibility, yes, Your Honor.

19

THE COURT:        Okay. Thank you.  All right. With that addition, Ms. Cornelio, is that your understanding of the entire terms of the plea agreement?

THE DEFENDANT:        Yes, sir.

THE COURT:        And you too as well?

MS. CORNELIO:    Yes, Your Honor.

(Docket Entry No. 197, p. 18.)  This Court explained to defendant in clear and unambiguous terms that the Government had no obligation to file a section 5k1.1 motion, regardless of what cooperation or assistance he provided:

THE COURT:        All right. Mr. Wade, there's also, as your attorney pointed out, there's also the possibility that the government might file a motion which is called a 5K motion, which asks me to give you a lower sentence than the guidelines would recommend, if the government believes that you have provided them with substantial assistance. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:        All right. There are two important things to remember about that. *Number one, no matter how much you assist the government and no matter how much information you give them, there is no guarantee that the government will file the motion in the first place. It's up to them* and the government alone whether they believe what you've done amounts to substantial assistance and they file the motion.  So *you cannot force them to file it*, no matter how much information you give them, and I can't force them to file it. It's their decision, their decision alone, whether that motion gets filed in the first place. Do you understand that?

THE DEFENDANT:        Yes, sir.

THE COURT:        All right. Number two, *even if the motion gets filed, there's no guarantee that I'm going to grant that motion*. I may and I may agree with the government, but you cannot depend on that. So even if the government files the motion, there's no guarantee that I'm going to agree and

20

give you a sentence lower than the guidelines recommend. Do you understand this?

THE DEFENDANT:          Yes, sir.

*Id.*, pp. 21–22.

The plea hearing record does not support defendant's allegation that the Government was obligated, or had otherwise promised, to file a section 5K1.1 motion. Trial counsel was not ineffective in not objecting to the Government's failure to file a section 5K1.1 motion, and habeas relief is unwarranted.

*Plea Withdrawal*

Defendant complains that counsel failed to file a motion to withdraw his guilty plea. In her affidavit, trial counsel responds as follows:

> 22.    Wade says Counsel was ineffective for failing to request withdrawal of his plea agreement upon his request.
>
> *Response*: Undersigned counsel has no notes or recollection indicating that Mr. Wade requested that his plea agreement be withdrawn. To the contrary, undersigned counsel explicitly recalls discussing with Mr. Wade, after he first received the PSR and was very upset by the Guidelines range, that the range and likely sentence resulting from his guilty plea and plea agreement was better than the range and likely sentence that would result from conviction at trial. Indeed, Counsel discussed with Mr. Wade whether it made sense to withdraw his plea and even discussed and advised that there would be no benefit in seeking to withdraw the plea. Mr. Wade agreed to move forward with sentencing and made no request to withdraw his plea.

(Docket Entry No. 237, p. 12, record citations omitted.)

Defendant presents no viable grounds under which this Court would have been required to withdraw his plea, or under which the Court would have granted a motion to withdraw the plea.  No deficient performance or prejudice under *Strickland* is shown.

The Court has rejected defendant's arguments for ineffective assistance of counsel in context of the guilty plea, and no habeas relief is merited.

### *Sentencing Errors*

Defendant also claims that trial counsel was ineffective at sentencing in failing to object to:  the calculation of his criminal history score, the two criminal history points imposed under U.S.S.G. § 4A1.1(d), the four-level enhancement imposed under U.S.S.G. § 3D1.4, and to the erroneous calculation of his total offense level.

In responding to this claim, counsel testified in her affidavit as follows:

Mr. Wade alleges that I provided ineffective assistance during sentencing as follows:

15.     By failing to [o]bject to the Court's erroneous calculation of Wade's criminal history points, because Mr. Wade received "six points under 4A1.1(c)," rather than the maximum four points.

*Response*:  While Mr. Wade accurately states the law, he is incorrect in his assertion that he was erroneously attributed six points because the PSR reflects that he only received four points under § 4A1.1(c).  While the PSR identifies the six instances that would otherwise receive 1 point under § 4A1.1(c), the probation officer makes clear the "maximum of four points has been counted under USSG § 4A1.1(c)."  Had Mr. Wade received six points under § 4A1.1(c), he would have had a subtotal of 12 criminal history points, not 10.

16.     According to Mr. Wade, two additional points were erroneously added for "being on probation at the time of the instant offense" because he

received his sentence of probation "in the middle of his federal investigation, once the instant offense had previously occurred."

*Response*:  Counsel could raise no non-frivolous objection to these two points.  Moreover, Mr. Wade argued with undersigned counsel when she advised him regarding this provision prior to sentencing. Mr. Wade's argument is contradicted by the plain text of the Guidelines. *See* USSG §4A1.1(d) ("two points are added [to a criminal history score] if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Mr. Wade pleaded guilty to conduct that occurred between May 1, 2013, and March 4, 2014.  Mr. Wade was serving a five-year probation sentence for being a felon in possession of a weapon since June 5, 2013, which overlapped with the sex trafficking offense.  Therefore the 2 points were appropriately added. In any event, the Criminal History Category would be V regardless of whether Mr. Wade had 10 or 12 criminal history points.

17.    According to Mr. Wade, undersigned counsel was ineffective by "failing to properly object to the grouping enhancement under [USSG] 3D1.4."  According to Mr. Wade, the maximum amount of points for grouping purposes available to Petitioner is two points [because] Petitioner was convicted to only two points."

*Response*:  There was no non-frivolous legal objection to the PSR's grouping calculations.  Undersigned counsel agrees with Mr. Wade that assignment of sentencing enhancement for relevant conduct that did not form the basis of conviction is unfair, and advocated that the Court vary from the Guidelines and not consider relevant conduct for evidentiary and fairness purposes.  However, there was no additional basis upon which counsel could object to the inclusion of counts which did not form the basis of Mr. Wade's conviction, but which were included as "pseudo-counts" for purposes of receiving a grouping enhancement under USSG 3D1.4.  Indeed, prior to his guilty plea, *Mr. Wade and the undersigned counsel discussed at length that all counts in the indictment would be considered relevant conduct to the offense and would provide a greater sentence, notwithstanding pleading guilty only to specific substantive counts.*  Ultimately, Mr. Wade agreed to nonetheless plead guilty after accepting that undersigned counsel would

advocate for the Court to exercise its discretion to not consider counts for which there was no conviction, and because the plea agreement in his case offered the probability of a lower sentence than would occur after a conviction at trial.

18.   Mr. Wade argues that his total offense level should have been 39, not 41.

*Response*:  There was no non-frivolous objection to Mr. Wade's total offense level.  First, the total offense level was correctly calculated at 41.  Even if the correct total offense level had been 39, the resulting guideline range would have been the same:  360–life.

Mr. Wade's belief that his total offense level should be 39 and not 41 is understandable because of the complexity of the Grouping and Multiple-Count adjustment rules that apply to the Guidelines.  Because the Total offense level identified by the PSR was "48,"  Mr. Wade appears to quite logically assume that this total should be adjusted by 3-levels down for acceptance of responsibility, in addition to a two-level reduction for the Court opting not to impose the computer enhancement, in addition to a four-level reduction for the Court opting not to apply a leadership enhancement.  However, the adjustments for computer usage and leadership role are applied to each count of conviction or to each pseudo-count, and prior to the grouping rules being applied.

In other words, without the computer enhancement and the leadership enhancement, paragraphs 86 to 94 of the PSR would be changed such that the total number of units would remain 3.5, the greater adjusted offense level would be 40 rather than 44, and the combined adjusted offense level would be 44.  After acceptance of responsibility, the total offense level was correctly 41.  Undersigned counsel did not err by failing to object to this correctly calculated offense level at sentencing.

*      *      *      *

24.   Mr. Wade contends that undersigned counsel erred by failing to object to the erroneous calculation of his offense level, because any adjustments should have been reduced from an offense level of 43, not 48.

24

*Response*:  Mr. Wade's contention fails under USSG § 1B1.1, which lays out the order in which the Guidelines calculations should be applied.  There was no non-frivolous objection to calculation of Mr. Wade's total offense level.  Moreover, because the plea agreement included no promise by the government that it would move for a downward departure due to substantial assistance by Mr. Wade, there was no non-frivolous argument that the government had breached the plea agreement by failing to so move.

(Docket Entry No. 237, pp. 6–13, record citations omitted, italics in original.)

Trial counsel's affidavit testimony and legal analysis are supported by the record and the applicable statutes and guidelines.  Defendant fails to establish that, had counsel raised these objections, the objections would have been granted and the Court would have imposed a lower sentence.  No ineffective assistance of counsel is shown under *Strickland*.

### Conclusion

Defendant's section 2255 motion (Docket Entry No. 219) is DENIED, and his habeas claims are DISMISSED WITH PREJUDICE.  The motions to amend (Docket Entries No. 258, 259) are DISMISSED AS MOOT.  A certificate of appealability is DENIED.

The Clerk of Court is ORDERED to terminate the related civil case in this matter, C.A. No. H-18-0029.

Signed at Houston, Texas, on August 11, 2021.

Gray H. Miller
Senior United States District Judge

25